Good morning. We have four R.E. cases this morning. The first is No. 23-1909, Hawaiian Dredging Construction Company v. United States. Mr. Zisa. Good morning, Your Honors. Go ahead. Again, good morning. May it please the Court. My name is Michael C. Zisa. I'm counsel for Hawaiian Dredging Construction Company. Your Honors, this case involves the question of whether the Court of Federal Claims erred in dismissing Hawaiian Dredging's complaint on a 12b6 motion to dismiss when the complaint contained well-pled facts sufficient to support Hawaiian Dredging's claims and without giving Hawaiian Dredging the opportunity to amend its complaint. Hawaiian Dredging submits that the Court of Federal Claims did error for four reasons. First, the Court erred by effectively finding that Hawaiian Dredging assumed all risks under a firm fixed-price contract. This finding ignored well-settled law that under a fixed-price contract, a contractor is entitled to increase costs and delays resulting from the government's directed or constructive changes. Second, the Court erred because it did not accept Hawaiian Dredging's well-pled allegations as true or construe the allegations in the light most favorable to Hawaiian Dredging. In its complaint and the attachments to the complaint, Hawaiian Dredging alleged facts sufficient to support its claims for changes to the contract which caused delays and increased costs. You're going along. I want to hear your fourth point, but I want to start asking questions. Okay. Okay. Please. What's your fourth point? Okay. The fourth point or the third is that the Court of Federal Claims erred in dismissing portions of Hawaiian Dredging's claims that weren't subject to the motion to dismiss and weren't addressed in the opinions or the briefings. And finally, Your Honors, the Court of Federal Claims abused its discretion. What were the claims that weren't addressed? Sure, Your Honor. There were two claims. So in the contracting officer's final decision, the decision determined or made a decision that there were two, several line items in the payment application, the final payment application that was submitted that were constituted an overpayment, totaling about $892,000. And so in the final decision, the contracting officer said Hawaiian Dredging had to reimburse that money. In the complaint, Hawaiian Dredging challenged that decision. Okay, but what's the underlying issue about the overpayment? They were saying that it was work that had already been paid for. And so that decision was challenged by Hawaiian Dredging, but it wasn't addressed in any of the briefings. It wasn't addressed in the order, but it was dismissed, which left Hawaiian Dredging now with no recourse. That claim has disappeared as a result of the decision. And again, it wasn't addressed. The second claim, one of Hawaiian Dredging's claims was for 12 days of additional time. Well, that's not an issue anymore, right? Well, that issue has been resolved, but we don't have a modification. We don't have anything. It was resolved in the final decision, but it is no longer, it's not been resolved as a matter of a contract modification. That's the overpayment item. That's the, there was a 12-day extension of time. The overpayment item, again, that remains unresolved. Is the 12-day extension different? Yes. Is that a different argument from the two overpayment issues? That's correct. That's correct. Well, the government says you didn't raise the issue of the government's claim for repayment of the $892,000. You didn't address this claim when it filed with Lee for the court. It's a reply. And the government has all these reasons why you didn't raise it and you didn't preserve it. Well, it was raised, Your Honor, in the complaint that was filed by Hawaiian Dredging. Part of our claim was that that was an improper. You read the motion to dismiss as not covering that because it didn't mention it. That's correct, Your Honor. In other words, we didn't address it in the motion to dismiss because it wasn't even raised. It wasn't part of the motion to dismiss, and so it wasn't that issue. In other words, we didn't even expect, worst case, that that claim was going to be dismissed as well. Well, you want to focus on the big money issues, which are like the right-of-way issues and utility polls? Yes, Your Honor. I mean, the court better claims to dismiss that on the grounds that there's no limit on the amount of time the government can take to produce the final right-of-way. Yes, Your Honor. And quickly, I'll take a step back. So this project is called the Lahaina Bypass Project. It was a design-build project of a new bypass highway and the widening of the Hanapulani Highway in Maui. In addition to utilizing portions of state-owned land, the proposed new roadways would... Okay, can we get to something? Sure. It seems like Appendix Page 9, which is the Court of Claims Opinion, so here's what she said. She says, well, the contract assigns the government responsibility to obtain those. It does not specify a date. We all know that, okay? Thus, HDCC is wrong to allege the government caused unforeseeable and therefore excusable delays in contravention of an express duty. So there's no express time frame in the contract that the government has to perform this, right? That is correct, Your Honor. Okay, and then she goes on to say, because the contract required HDCC's participation in securing ROSE, it was entirely foreseeable that the government would not have finalized ROSE prior to awarding the contract. So I have two questions. Your allegation isn't necessarily just that they didn't finalize it prior to the award. Your allegation is broader than that, right? That is correct, Your Honor. And then did you, did the contract require your participation in securing the ROWs? It did require that Hawaiian Dredging assist the government by preparing the surveys and the paperwork, so to speak. And did you do that? We did do that. In a timely way? We did it in a timely way. Well, that's your allegation. And that's our allegation. And none of this has been proved yet. You're alleging you did that in a timely period, and you're also arguing that in the circumstance where there was no stated limit of time in which the government was supposed to produce the ROW, there should be a reasonable time, and you're entitled to an adjudication of that question. You have just summarized it very concisely, Your Honor. Is that... And surprisingly, the government didn't respond to that argument in its brief at all. And we agree... ...that it supports this theory. That's correct, Your Honor. And if you take this... Well, doesn't that strike you? Yes. I mean, that goes to the core of this, is that we've alleged that the four months it took... Well, also, the Court of Federal Claims didn't refer to that body of law because you didn't present it to her. Well, we... There's no reference in the briefs below to the case law that you support here or to the notion that where there is an absence of any provision in the contract with time, you read in a reasonable time requirement, then there has to be a showing to that effect. Well, and Your Honor, I think the allegation that we made in our complaint and then in the briefings at the Court of Federal Claims was that we alleged it was not foreseeable that it was going to take four months after the notice of proceed for the government to obtain this final right-of-way, which, again, then would allow us to complete the survey work that was necessary to design the full roadway. And then from that... Well, not foreseeable is not the same issue as reasonable time. Well, we said it's not foreseeable. The government's response is, well, and the court said, hey, it couldn't have been unforeseeable because there's no amount of time. And if there's no amount of time, then it would be... Rather than argue, you know, in a vague way as to whether or not there's been a waiver or a forfeiture here because it wasn't presented below, your primary argument of appeal, as I understand it, is that the law requires where, for example, the page of the opinion that Judge Coase pointed to has the finding that the court below said the contract doesn't specify a date by which the government had to produce AROW. Therefore, it could take as long as it wanted. Therefore, there's no delay. That's the argument. And you're challenging that here on the basis of the law, right? That's correct. Absent a specific time specified in the contract, we imply a reasonable time. And so the question then becomes, what would be a reasonable time? We allege that... You don't know. You want a trial on that. That's correct. Well, is there a difference necessarily between... There's an overlap between foreseeable and reasonableness, right? So, I mean, you all have done these contracts before. You're familiar with right-of-ways. What would... Do we know what your best guess was for what would have been a foreseeable, i.e. reasonable, time frame with which the government would obtain these AROW? And, Your Honor, I'd be stepping outside of what was pled in the complaint. But you're essentially complaining it was not foreseeable-slash-reasonable. Exactly right. It was too long. And it was... Four months. Four months. That's correct, Your Honor. And what's important about it is... And what was the entire time frame? How much time was left at the back end once they got the AROWs? There was still a long contract duration to perform the work. But what's important is the impact of that four-month delay. We... It was a design bill. So Hawaiian Judging was responsible to design this new bypass and expanding the roadway. And we were working from... There was a contract document that was in the RFP. It was called Alt III. And it was a depiction of what the right-of-way they imagined it was going to look like. And we based our design on that. We were 80 percent complete with the design when we got the final right-of-way. And that's another claim we have, is that the final right-of-way they received, which, A, it allowed us to now go complete the survey work on this land that we couldn't go on earlier because it wasn't the states. But then it was different than what... They said that we didn't prove that it was a material change. And that, again, Your Honor, that's... But didn't you allege it was a material change? Yes. We alleged that it was different. And that's what's significant, is the court made a finding of fact saying, you know, we don't find this to be material. And that's something that, first of all, if you read the claim, I mean, we say that, you know, the limits of construction were different. So we had to adjust the way the road would move. And we had to address other components of the design, change other components. Can I take it back to Judge Jike's initial question on this? I mean, they moved to dismiss the complaint, not impart. They moved to dismiss the entirety of the complaint. If you don't come back and say anything about a particular provision, that's on you, Ron, not on them. And we'll say it wasn't drafted that way. What wasn't drafted? The motion to dismiss. The motion to dismiss primarily was arguing the Permits and Responsibilities Clause. And they indicated that the Permits and Responsibilities Clause said, look, this is all pushed onto you, contractor. You're responsible for, and frankly, the motion... Well, that didn't necessarily exclude the claim for repayment. So isn't it incumbent upon you to say, hey, you've alleged this, but this doesn't go to this claim. So your motion to dismiss has nothing to do with this particular claim. And, Your Honor, at one point, the judge at the Court of Federal Claims, Judge Lerner, issued an order asking very pointed questions. And one of the questions was, do you believe, what claims are addressed by this and what claims are not? And we made very clear that we didn't believe that the claim for repayment was addressed. We made clear that we didn't believe that the 12 days... What did the government say? Wait, are these filings in the appendix? Because I don't think I came across that. I believe that they are in the appendix. I believe that they are in the appendix. But the point is... Under the government's view of the repayment provision, are they saying that now they're entitled to the repayment because your claim was dismissed? Yes, Your Honor. In fact, they have a collection company that is sending notices to Hawaiian Dredging saying, you know, it was $892 plus, now we're over $1 million with interest that they're saying. Explain to me again what the underlying issue is with respect to the repayment. The government is saying you were already paid for that. It was encompassed in what you were paid for. Yes, Your Honor. They're saying that line item 26, or I'm sorry, several line items in payment application 26 were already paid, and so this would constitute an overpayment. It constituted an overpayment. This amount of money is separate and distinct from the ROW money that you're trying to raise here. That's correct, Your Honor. And the utility money that you're trying to raise here. So this was kind of a separate thing. That's correct. The money was for separate things. Yes. The $892, yes, is entirely a separate item that wasn't part of our claim. It was only part of the contracting officer's final decision. Okay. Before you sit down, I want to ask you a question about the retaining walls claim. Sure. Which seems to be a claim that the government caused delays by not resolving a change order dispute. Is that? That is correct. Why would that give you an extension of time? Why is the government required to resolve a claim order dispute within a particular period of time? Well, so there are two different walls. There's the Castleton wall and then the MECDA wall. The Castleton wall was not part of the contract scope, but the government was negotiating. You're asking them to make it part of the contract scope, and they delayed in responding to that. I don't understand how that can lead to a delay claim. Well, because it extended the duration of the project. They asked us to price it. We submitted the pricing. We couldn't do the work, though, until there was a contract change order issue. All right. What's the other retaining wall? Then the other retaining wall was the MECDA wall, which part of that, the grading portion of it, was part of our contract. But because of the Castleton wall, it would have expanded that scope. So you're saying, again, that the change order should have resulted in a contract change to include that other work with respect to the other retaining wall. That's correct, Your Honor. We're saying that the delay in issuing the Castleton, ultimately, which they decided not to issue, they said, we're not going to do that anymore. It delayed the performance of the MECDA. And with regard to that, Your Honor. I think we're out of time. We have two minutes for rebuttal.  Thank you, Your Honor. Thank you. Mr. Upton. Good morning, Your Honor. So why didn't you address the reasonable time issue in your brief? The reason is because, to quote HBCC's counsel, read the claim. If you read the claim, there's a distinction. And Your Honor brought up the issue of reasonableness. I don't understand what you're talking about. What I'm talking about is the claim presented to the contracting officer, claimed that the ROWs were not issued before the notice to proceed. Before the notice to proceed. That is reiterated multiple times throughout the claim at Appendix 43. That's not answering my question. I mean, that's an argument that you could have made in your brief, but you didn't. Why didn't you address the issue? The issue, to my knowledge, the issue was not raised until the reply brief in this case. Well, what about they raised, they cited Franklin Packoff versus Roche and other cases that explicitly stand for the proposition that even when the contract is silent, there's still a reasonableness obligation. Those cases were cited in blue, discussed in blue, and they're nowhere to be found in red. That's, I think, Judge Dyke's question. I understand. I think, again, I understand the question. The claim here was about whether the ROWs were issued before the notice to proceed and they weren't. Well, that's an argument that you didn't put it in the brief. This whole question of reasonable time. Maybe you say, well, that doesn't help them because there was no obligation to get the rights of way before the contract signing or whatever it is. But you didn't say anything about it in the brief. That's not helpful to us. I apologize, Your Honor. My understanding, again, was that the claim was tied to the notice to proceed, and this is a matter of – Did you have the blue brief with you? Say again? Did you bring the blue brief with you? I did, Your Honor. Look at page 24. I see it now, Your Honor. Yes. Your failure to address it really amounts to a forfeiture of the argument that you have, right? I don't believe so, Your Honor, because, again, this to me is HDCC's counsel expanding what their claim actually was to the contract officer. Look at the complaint. What are you relying on in the complaint? Because you're right, the CFC does say that because the government would not have finalized the ROWs prior to awarding the contract or issuing the notice to proceed. That's correct. On Appendix A to I. To have read, but nowhere did I see where that was – it was limited to the government. I mean, to me, it was clear that they were alleging that it was unreasonable for the government to take so long to get the ROWs, not exclusively because they didn't get them before they were in breach. To your point, Your Honor, you're referring to the briefing. But from the claim and the contract officer's final decision to the Court of Federal Claims, all track to the issue of the claim, that it was whether the ROWs were issued before the notice to proceed, the contracting officer addressed it as such, the court recognized it as such. Again, I can provide you the appendix sites on that. And so the reasonableness issue doesn't come into it because that was not the claim presented to the contracting officer. It could, in theory, present the Meripakis issue in terms of presentment, but the First Amendment complaint does not raise it as a reasonableness. The Second Amendment complaint did raise it explicitly, right? And, Your Honor, the Second Amendment complaint is not the operative document here. The Court of Federal Claims refused to allow the Second Amendment complaint because it would be futile. But under the theory that we're talking about now, it's not futile. The Second Amendment complaint makes an argument and makes a claim based on unreasonable delay, right? So that wouldn't be futile to add that claim. Again, it could be a claim that they would present to the contracting officer that they chose not to. And we are beyond the six years at which they could present that claim. They presented a claim about whether the ROWs were issued prior to notice proceed. That claim was denied. That claim was appealed to the Court of Federal Claims, and the motion dismissed granted on that claim. So the reasonableness claim that is now being read in through the briefing was not presented to the court. They will forfeit that argument by not making it in the brief. I can't say, Your Honor. Well, on page 24 of your brief, you said instead you're talking about HBCC, and I don't think this is the only site you talk about. It's alleged that its delays were the result of the unforeseen agency delay to timely secure the final ROWs from local landowners, which delayed. I mean, we're talking about the delay in general. We're not talking about just not having received – gotten it before the contract went into effect, right? I mean, you seem to engage in that argument, so I'm a little perplexed. I mean, I don't – maybe I'm wrong, but there's nothing in your red brief that says, hey, wait a minute. The claim is only related not to the reasonableness of our taking 400 days, but to the fact that we didn't get it done beforehand, right? I mean, you don't engage in that. You're engaging in the argument that it's brought – the claim was brought. I'm – I was engaging in the argument based on the claim that was brought, and I don't believe I addressed the reasonableness issue, Your Honor. Nor did you argue that the reasonableness issue wasn't properly raised because it wasn't in the claim presented to the contracting officer, right? It would – it was not addressed by the court, I believe. You didn't make that argument in the brief, right? I did not, correct. Okay. So maybe it's forfeited. That's a problem. Can you – just before you sit down, I do want you to touch on this recoupment or whatever it is it's called, that 895. Yes. My understanding is that there is a – the contracting officer's final decision assessed 890-odd thousand dollars, but it's reduced by the 12-day extension because that reduces the liquidate damages to bring it down to about $830,000. And why are you saying that that was included in the complaint under the motion to dismiss? Because it's fundamentally tied to the utilities argument, and so it is money associated – The 12-day extension, there are two things here. There is the overpayment. Correct, Your Honor. Those were the two when the contracting officer said, well, here's some extra money, and now they recoup it at the end on the grounds that it was – work was – it was in the scope of work, and therefore we shouldn't have given you the money back. That's separate from the so-called 12-day extension issue? The 12-day extension issue was the one piece of the contracting officer's final decision that was granted. One piece of the claim that was granted. That's resolved. That's not an issue. That's resolved, and that's not an issue. But it has the impact of reducing liquidate damages to reduce the dollar amount of recoupment. The dollar amount of recoupment is tied to the utilities issue. If there's the right-of-ways, the utilities, the wall works, and the permits, if those are the four alleged delays – We don't know that for sure. That's arguably – that's a factual question. The – I didn't understand the overpayment issue to go directly to the argument about the delay and not be able to say where the utility poles were going to be moved to. That is my understanding from the briefing. And also, as Your Honor noted, it is an issue that was not raised in the opposition to the motion to dismiss or in the briefing. So hypothetically, if we were to conclude that the dismissal under 12B-6 was improper for the row stuff and for the utility stuff, does that reopen and revisit the $892,000, or is that a separate and distinct claim that you would say, no, that was dismissed, that has no relevance to the calculations we do with respect to the rows or the utilities? Because HDCC failed to appeal that specific issue to this court, I would say it's waived. Which issue? The recoupment. The recoupment, but how does that relate to – It's in the blue brief. It's a major argument in their blue brief. How does that relate, the recoupment, the amount, and the allegations, to the allegations regarding the unreasonableness of the ROWs and the utility stuff? Is it all part of the same bucket of money, or are there separate and distinct issues? My understanding is that the recoupment is tied to the utilities issue. To your point, Your Honor, while it is raised for the first time in the briefing at this court, it was not raised in the motion to dismiss briefing. It wasn't raised in the motion to dismiss either, right? It wasn't raised in your motion to dismiss. We, again, as Judge Prost noted, we moved to dismiss the whole complaint. But you never mentioned the recoupment issue. No specific mention. I think that's correct, Your Honor. And when you argue that somehow these overpayment claims are related to the utility poll issue, then aren't you just arguing yourself right into saying if we remand on the utility poll issue, this should go back as well? Again, on the utility poll issue, the contract's clear. That's part of these issues. The hypothetical that Judge Prost raised was if we were to decide that there was error on the right-of-way and the utility poll issue sufficient to require remand for trial, and when you tell me right here a few minutes ago that the overpayment issues are related to the utility poll issue, then I don't see why we wouldn't send the overpayment issue back as well. I don't disagree with that, Your Honor, but I do. You don't disagree with sending it back? I don't disagree that the repayment and the utilities issues are connected. And if one is to go back in your hypothetical, then the other is connected to it. However, the contract was clear, and this motion to dismiss was decided by. Am I hearing this correctly, that you don't disagree that we should send the overpayment issue back if we're sending the utility poll issue back? If they're connected. You're saying they're connected. I don't know whether they are or not. I mean, isn't that a fact question? If you are sending one back, I would imagine you would send the other back in that hypothetical. However, the utilities claim is based. The way it was presented to the Court of Federal Claims and the way we addressed it in the motion to dismiss and the way the court ruled was that the contract was clear, that dealing with utility companies, preparing utility agreements, all of which was solely the responsibility of the contractor. Okay, but their argument here is that the government delayed in signing off on the utility agreements. Again, this to me is another mischaracterization of the underlying claim. Just like with the notice of receipt issue I mentioned before, on the utility issue, in the briefing here, the plaintiffs are characterizing it as a delay in signing the utility agreements. If you read the claim itself in the Contracting Officer's Final Decision, the issue is the delay by non-party utility companies in performing utility work. And so they are distinct and separate factual bases. And the court below was proper in viewing that. Did you make that argument in your red brief? Did you make that argument in your red brief here? That they are different? I did not, Your Honor. Assuming they had made the allegations that you engaged with in the red brief as if they had, where are we left with our case law? Would you agree that our case law, like the Franklin v. Roche case, say that in this view of silence, there is an obligation to act reasonably? I don't disagree with that case law. But the case that's most on point here is Bell-Heary, a Fed Circuit case from 2014, that plainly lays out a largely identical situation with a contractor in a firm-fixed-price design-build contract where they, in their bid, presumed a certain permit would be issued, and it wasn't. And it changed and caused a lot of additional expense and time to their performance of the contract. And when that issue, again, when the claim was denied and it made it to the Court of Federal Claims and then ultimately to this court, the granting of the motion of suspense was affirmed because the contract in that case was clear. It included the same FAR provision, 52-236-7 on permits and responsibilities. It was plain that those responsibilities related in that case to the permit issue fell entirely on the contractor. Did you cite that case in your brief? We did. We discussed it. But you also cite page 5 where you cite the provision in the contract and you follow it with, which you never recite again, while you acknowledge, while the contract contemplated that the government would take the final road. It also required HDCC to do this other stuff. So you acknowledge that beyond what the contract language says, which is all the responsibility of the contractor, the contract contemplated the government would execute the final ROWs, right? Again, you're reading that from the brief, and that's correct. My understanding, looking closely at the language of the contract, the actual signature, the final piece of the rose, is a state agency. It's the Hawaii Department of Transportation. Wait, so you're saying the government didn't enter this contract with any obligation to do anything whatsoever with regard to getting the right-of-way? They are involved in the right-of-way plans are submitted and it proceeds. But ultimately, the Hawaii Department of Transportation is the one that signs. Is it correct that the contract contemplated that the government would execute the final ROW? Your Honor, I'm out of time, but may I answer? Yes, the government has an involvement, but ultimately the contract assigned the risk to HDCC to deal with the ROW. Regardless of whether the government acted in a reasonable time or not? Again, based on Belhiri, yes, that's correct. The assignment of risk is absolute unless the contractor, again, citing Belhiri, unless the contractor can cite to a different provision of the contract that makes that assignment of risk ambiguous, and they haven't done so. All right, I think we're out of time. Thank you. Mr. Zisa, you have two minutes. I hate to interrupt you, but I was going to ask you this question, which is that this difference between whether you were only going after the government because what you said was they should have and they needed to get the ROWs beforehand, or whether your complaint also covered the unreasonableness of the delay of doing it while the contract was about to go out. That was my first point, Your Honor, and if you look within the appendix, appendix page 31, which is the complaint, and specifically paragraph 21 of the complaint. What page is that? It's appendix page 31, and it's paragraph 21 of Hawaiian Dredging's complaint, and it says, in the final decision, CFL ignored its responsibility for causing project delays. The critical path delay that prevented actual substantial completion of the contract work until July 24, 2018, resulted from the following for which CFL is responsible. A, the unforeseen CFL delay to timely secure the final right of ways, ROWs, from local landowners, which in turn delayed the final road design and grading. So you can see, Your Honor, that that's the allegation. After the notice to proceed was issued, we anticipated that it was going to be provided in a reasonable amount of time, and we believe that it was not provided in a reasonable amount of time, which constituted a change to the contract. Next, Your Honor, the question was raised about the signing, about the utilities, and as you all pointed out, the allegation is that Hawaiian Dredging, we were responsible for the relocation. We were responsible to coordinate with the utility owners, but then once we prepared those agreements, they were for the government to sign, and our allegation is that the government sat on its hands and it didn't sign those specifically. We presented them on August 17th, I'm sorry, August 3rd, 2017, but the government didn't return executed agreements until February 28th, 2018, 2009 days later. That's specifically, that allegation is from Appendix .199, page 199 to 200. We specifically state that. Those are facts. Those aren't labels or legal conclusions. Those are facts that we believe support that claim. And then the final point that I want to make, and then certainly I'll address any questions, is with regard to Bell-Heary. The Bell-Heary decision dealt with the Permits and Responsibilities Clause, and undoubtedly that clause does shift the risk of loss to the contractor unless, and there's a big unless, unless the contractor points to government actions or inactions that would override that. Is that unless language in the case itself, or is that your imprisonment? I can read from the, it says the. What page are you on, of the case? Of the case, it's page 1334, Your Honor, and I will tell you when I start quoting. The Permits and Responsibility Clause allocates risk for obtaining permits to the contractor. The word unless is my word. Unless the contractor alleges, and this is in quotes, countervailing contractual duty on the government that contradicts or renders ambiguous the express allocation of risk to the contractor. And that's at page 1334 of Bell and Heary. And that's what we've alleged. We have alleged that the government had a responsibility to obtain this final right of way, and I think. In a reasonable time. In a reasonable time. Because it's connected to the same thing. That's right, and I want to just point out. And Bell and Heary didn't involve a reasonable time issue. It did not, Your Honor, but what's the distinction about Bell and Heary, because in Bell and Heary the court did say that the Permits and Responsibility wiped out the contractor's claim, but the contractor made no allegation that there was this countervailing or overriding. Intervening force. That's exactly right. And I think just one last point. On page 728 of the appendix, which is from the conditions of the contracts, there's section 107.07. It's titled Furnishing Right of Way. And period. The government will obtain right of way. I think that's very important. This was the government's responsibility. As a contractor, we can't go out and obtain land from private parties. We can't do that work. That was the government's responsibility, and we relied on the government to do that in a timely manner. And ultimately, we alleged that they didn't do it and that it had impacts. Some land had to be acquired under eminent domain or by consent, right? That's correct. And then subdivisions had to be. Some from private people and some from a local government agency, as I recall. That is correct. It's the county of Maui. That was the public, and then there was a private land trust. You need to know the final meets and vows. How are you going to move the utility poles to make sure that you don't put them on the wrong land? That, how are you going to create a roadway and then have the knot pass over onto private lands? Also, to develop the design, we had to enter the private lands, the land that ultimately became part of the right-of-way, to do the survey work. And without the ability to enter on those lands, we couldn't do the survey work. Without the survey work, we couldn't complete our design. So it all is tied together, and it goes back to our allegation that the government didn't provide the final right-of-way in a reasonable amount of time. Okay. Thank you. Thank you.  Thank you. Okay. Thank you.